(50 App. Div. 444.)

### MAJESTIC HOTEL CO. v. BIGELOW.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

LANDLORD AND TENANT—EVIDENCE OF CUSTOM.

In an action for rent, where plaintiff alleges that the premises were leased for a year, and defendant alleges that the tenancy was one at will, evidence of plaintiff showing his custom to charge a different rate of rental for yearly leases from that charged for monthly leases was inadmissible.

Appeal from trial term, New York county.

Action by the Majestic Hotel Company against Charles E. Bigelow for rent under a lease. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John J. Crawford, for appellant.
Herman Aaron, for respondent.

WILLARD BARTLETT, J. This action was brought to recover a balance alleged to be due upon a lease of an apartment in the Hotel Majestic, in the city of New York, for the term of one year from October 1, 1896. The defendant admitted that he had leased the apartment, but alleged that it was with the distinct proviso that the lease should not be for a year, but that, on the contrary, he should be at liberty and have the right to leave the apartment at any time, and thereupon to terminate the tenancy, which he did prior to July 1, 1897, up to which date he paid the stipulated rent. The only question litigated was whether the lease was for one year, as alleged by the plaintiff, or was terminable at will, as alleged by the defendant. Upon this issue the jury found a verdict for the defendant.

On this appeal the only assignment of error is the rejection of evidence offered by the plaintiff, upon rebuttal, to the effect that the plaintiff corporation was accustomed to charge different rates of rent for apartments in the Hotel Majestic when they were taken

64 N.Y.S.—6

by the year, from the rates charged when they were taken by the month. The president of the Majestic Hotel Company testified that he made the arrangement with the defendant in regard to the occupation of the apartment, and that the agreement was that the defendant should continue as a tenant thereof for another year. The defendant, on the other hand, denied this, and swore that it was expressly stipulated that he should be at liberty to surrender the apartment at any time. It is now contended in behalf of the appellant that the excluded evidence should have been received, as bearing upon the probabilities of the case, and tending to show whether the president of the corporation or the defendant told the truth. We are unable to see how it could properly have been received for this or any other purpose. A landlord who denies that he made a special contract of letting, whereby the tenant was at liberty to leave the demised premises at any time, cannot aid his denial by testimony that it was his own habit to charge a higher rent than he charged this particular tenant, in cases where he let apartments by the month instead of by the year. A man's own assertion as to what has been his customary conduct in no wise tends to show that he did not depart from that custom in a given instance. In Carter v. Pryke, Peake, 95, which was an action for use and occupation, the only question was whether the rent was payable quarterly or half-yearly; and Lord Kenyon refused to receive evidence offered by the plaintiff to the effect that his other tenants, of the same description as the defendant, paid their rents quarterly. In Holcombe v. Hewson, 2 Camp. 391, a brewer sued a publican on an agreement stipulating that the defendant should take all his beer from the plaintiff, and that, if he did not, he should pay an advanced rent for the house which he occupied. The controversy turned upon the question whether the beer supplied by the plaintiff to the defendant was of a fair, merchantable quality; and counsel for the plaintiff proposed to call several other publicans who dealt with his client at the same time as the defendant to testify that they were supplied by the plaintiff with an excellent commodity which was highly approved by their customers. This testimony Lord Ellenborough declined to receive, saying that the court could not inquire into the quality of different beer furnished to different persons. So it may be said in the case at bar that the trial court could not inquire into the contracts made by the plaintiff corporation with occupants of its hotel, other than the defendant. The same principle was decided by the supreme court of Vermont in Walworth v. Barron, 54 Vt. 677, where one of the principal issues was, as to the nature and extent of a contract between a deceased person named Bartholomew and the defendant Barron. A witness was called to prove that he had made a contract with Bartholomew similar in its terms to the contract which Barron claimed to have made with Bartholomew. The court held that this testimony was properly excluded, the fact that Bartholomew agreed to make a contract with the witness not being evidence that he subsequently made a similar one with Barron. In like manner it is true here that the fact that the Majestic Hotel Company made certain contracts with other

persons is no evidence that it made a contract with the defendant on the same terms. There is no ground for interfering with the verdict in this case, and the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.