EUNICE Y. COMSTOCK'S ADMR. *v.* ABE JACOBS.

February Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 3, 1912.

*Burden of Showing Error—Witnesses—Objections to Competency—Sufficiency—Executors and Administrators—Actions —Evidence—Testimony as to Intent, Motive, or Condition of Mind—Statements in Disparagement of Title—Cross-examination—Scope and Extent—Harmless Error—Self-serving Declarations—Discretion of Court—Reading Testimony to Jury.*

Doubts raised by a bill of exceptions should be solved against the exceptor, and so error does not appear where the exceptions show

only that, when a designated witness was called, the exceptor objected that the witness was interested in the cause of action and "was not a competent witness to testify to certain things"; and that "the objection was overruled and exception allowed to the competency of the witness to testify to certain things specified in the objection."

Objections to testimony do not raise the question of the competency of the witness.

On the issue whether a person did a particular thing, it is relevant to show the character of the subject-matter and the circumstances affecting the relations of the parties thereto.

In assumpsit by the administrator of the several estates of a husband and wife for the value of property that had belonged to the husband, but which, together with a bank book and other property belonging to the wife, defendant's evidence tended to show he had received in consideration of his agreement to take care of them during their lives, where it appeared that defendant's wife had been brought up by the intestates from three years of age, and that the intestates had lived with defendant as part of his family after the property came into his hands, defendant's wife was properly allowed to testify in his behalf concerning the relations that existed between herself and the intestates, and that they said they wanted defendant to have their property for taking care of them.

In assumpsit by the administrator of the several estates of a husband and wife for the value of property that had belonged to the husband, but which, together with a bank book, the property of the wife, defendant's evidence tended to show he had received in consideration of his agreement to take care of them during their lives, it was error to exclude plaintiff's offered evidence showing the value of the property that the intestates had turned over to defendant, especially as the offer showed that. value to be large, for that fact was material on the issue whether the contract relied on by defendant was made, regardless of the facts that defendant relied solely on that express contract, and plaintiff relied solely on an express contract to repay the amount represented by the bank book.

On the issue whether plaintiff's intestate and his wife, since deceased, had turned over to defendant all of their several property in consideration of his agreement to support them during their lives, defendant's wife was properly allowed to testify as to the value of

such support and care, as that bore on the probability of the contract having been made by plaintiff's intestate.

Where the issue was whether plaintiff's intestate and his wife, since deceased, had turned over all of their several property to defendant in consideration of his agreement to support them during their lives, testimony that the wife told a third person that she and her husband had given "our property" to defendant for taking care of them was competent, it being for the jury to say whether she meant the several property of herself and husband, rather than their joint property.

Where the issue was whether plaintiff's intestate and his wife, since deceased, had turned over all their several property to defendant in consideration of his agreement to take care of them during their lives, as defendant's wife had testified on direct examination, it was error not to allow plaintiff, on cross-examination, to show by her that, on a designated occasion after the claimed transfer, plaintiff's intestate loaned witness $50, as that fact, unexplained, both tended to impeach the witness, and was inconsistent with the arrangement relied on by defendant.

The admission of testimony that defendant's care of intestate and his wife was such that "everything seemed to be made as comfortable for them as could be," though irrelevant, was harmless to plaintiff.

Where the issue was whether plaintiff's intestate and his wife, since deceased, had turned over to defendant all their property in consideration of his agreement to take care of them during their lives, declarations of the wife, made after the claimed transfer, to the effect that she then owned certain of the property, were inadmissible where they accompanied no relevant act that they could characterize or explain.

One's declarations out of court that he is not the owner of designated personal property is admissible against his title, but his like statement that he is the owner is not admissible to prove the recited fact.

Where a jury, considering a submitted case, returned into court and asked that the testimony of a designated witness be read to it, which was done, the court did not exceed its discretion by thereupon, of its own motion and without any request, causing the counter testimony of another witness on the same matter to be read to the jury, although the court might properly have complied with the request as made.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the June Term, 1911, Orange County, *Butler*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case. This case has been once before in the Supreme Court, see 84 Vt. 277.

*M. M. Gordon, J. W. Gordon* and *William H. Sprague* for the plaintiff.

*David S. Conant, R. M. Harvey, F. S. Williams* and *Stanley C. Wilson* for the defendant.

POWERS, J.　This case has been here before, and the former opinion,—*Comstock's Admr.* v. *Jacobs*, 84 Vt. 277, contains a full statement of the facts, and inasmuch as they were not materially different in the trial now under review, they need not be here repeated.

The wife of the defendant was allowed to testify in his behalf and the plaintiff says she was incompetent under the statute. But this question is not before us. The exceptions show that when this witness was offered, the plaintiff objected, saying that she was interested in the cause of action and "was not a competent witness to testify to cértain things." The bill then goes on: "The objection was overruled and exceptions allowed to the competency of the witness *to testify to certain things specified in the objection.*" But what was specified in the objection is not shown, and we have no way of telling whether the evidence actually given by Mrs. Jacobs was included in the "certain things specified in the objection," or not. In this condition of uncertainty, we have nothing to do but solve the doubt against the plaintiff, *Stoddard* v. *Camb. Mut. Fire Ins. Co.,* 75 Vt. 253, 54 Atl. 284, and hold that error does not appear.

Nor can the subsequent exceptions to Mrs. Jacobs' testimony avail the plaintiff to raise this question. For those exceptions were to the evidence and not to the witness; so the question of competency was not raised. *Walston* v. *Allen,* 82 Vt. 549, 74 Atl. 225.

The testimony of Mrs. Jacobs just referred to concerned the relations which had existed between herself and the Comstocks, and the desire which they had expressed that Mr. Jacobs should have their property for taking care of them. Evidence had

already been given tending to show that the Comstocks had turned over to the defendant all of the property owned by both or either of them. There was no error in admitting the testimony objected to. The circumstances surrounding these parties and their former dealings together with their previous relations, were admissible under the rule that on the question whether a person did a particular thing or not, the character of the subject-matter and the circumstances affecting the relation of the parties to that subject-matter, affect the probability of the thing in question having been done as claimed. *Kimball* v. *Locke,* 31 Vt. 683. And it was under this very rule that the testimony offered by the plaintiff as to the value of the property which the Comstocks or either of them had turned over to Jacobs should have been admitted. If, as shown by the offer, it amounted to a large sum, it was a circumstance which was for consideration by the jury in determining whether the contract relied upon by the defendant was entered into. The relations which had existed between Mrs. Jacobs and the Comstocks were such that some liberality was reasonably to be expected on the part of the latter, and this made the excluded evidence of somewhat less importance, but did not render it inadmissible. Its weight and effect were for the jury, and it was to be considered in the light of all the circumstances shown. That a part of this property came from Mr. Comstock or both the Comstocks, and not from Mrs. Comstock alone does not change the situation. If, in fact, the defendant had already received a large and adequate sum for the care and support of these aged people, it was a circumstance to be considered on the question of the probability that Mrs. Comstock would, in addition thereto, put in her deposit in the savings bank. The ground on which this line of evidence was excluded appears from the bill of exceptions to have been that the plaintiff relied solely on an express promise to repay the amount represented by the bank book, while the defendant relied solely on an express contract for support, under which the bank book and other property was turned over to him. But these facts do not affect the admissibility of the evidence. Each party was entitled to give in evidence anything which had a legal tendency to throw doubt upon the execution of the contract claimed by the other. The value of the property referred to was admissible for this purpose, and the exclusion of evidence of it was error. *Davis* v. *Randall,* 85 Vt. 70, and cases cited.

For the reasons just given, it was not error to allow Mrs. Jacobs to testify that it was worth twelve dollars per week to support and care for Mrs. Comstock while she lived at the defendant's house. This, too, bore upon the probability of the contract which defendant claimed having been made.

Nor was it error to allow her to tell what Mrs. Comstock said to a visitor to the effect that she and her husband had given their property to the defendant for taking care of them. The plaintiff objected to this, because the evidence applied only to their joint property, and not to the separate property of Mrs. Comstock. But the expression did not so clearly relate to joint property as to require its exclusion. It might well be that Mrs. Comstock would speak of her own or her husband's property as "our property"; such would be a common and natural way for a husband or wife to speak. So it was for the jury to say whether the statement referred to their joint or individual property, and to give it effect accordingly.

The plaintiff should have been allowed, in cross-examination of Mrs. Jacobs, to show that Mr. Comstock, on a certain occasion after he had made the claimed transfer of his property, loaned her fifty dollars. She had already testified in direct examination that the Comstocks had given over all their property to the defendant for their support and this statement covered everything that either of them had or owned. If this statement was true, Mr. Comstock would not have had fifty dollars to lend, and if he had fifty dollars to lend, the statement could not be true. So the excluded testimony would have been of more or less value as evidence to impeach the witness. Besides, the fact that Mr. Comstock had this money was, unexplained, inconsistent with the arrangement relied upon in defence, and therefore admissible in evidence. And for this reason, Mr. Sumner's testimony, also, should have been admitted.

The evidence of Mrs. Moulton to the effect that the Jacobs' provisions for the Comstocks was such that "everything seemed to be made as comfortable for them as could be," is of too small consequence to spend any time over. It was outside the issue, but that was not the objection. It could not have harmed the plaintiff, and so its admission was not reversible error.

The plaintiff offered to show that on one occasion when Mrs. Comstock was contemplating a journey to Manchester, N. H., she said, "I can go in my own carriage as far as Bradford, be-

cause it rides easy." This was after the alleged contract for support was made; and the reference was to a carriage which the defendant claimed had been turned over to him under that contract.

The plaintiff also offered to show that on another occasion, in the summer of 1908, and between the time the defendant claimed the bank book was turned over to him and the time when it was actually assigned, Mrs. Comstock, in the presence of Mrs. Jacobs, said to Mrs. Sanborn, the witness, pointing to a trunk, "I have a bank book in my trunk; it is my bank book and they won't get hold of my money."

Both of these offers were made to prove the facts stated. Both were excluded and the plaintiff excepted. The evidence was inadmissible. These statements of Mrs. Comstock accompanied no act, and there was nothing which they could characterize, or to which they could attach or give color. In these circumstances such statements are not admissible. *State* v. *Ryder*, 80 Vt. 422, 68 Atl. 652. They were purely self-serving declarations; so far as their admissibility is concerned, they stand as would the bare statement of Mrs. Comstock that she had not made the contract for support, or the bare statement of the defendant that she had made the contract for support,—if made in the same circumstances. The extra-judicial declaration by one that he is not the owner of certain personal property is admissible against his title, but his statement out of court that he is the owner is not admissible in his favor. *Fellows* v. *Smith*, 130 Mass. 378. That Mrs. Comstock is now deceased does not affect the question.

After the jury retired to consider the case, it returned into court and requested that the testimony of Mrs. Bonnett be read to it. This testimony was to the effect that she was present when Mrs. Comstock assigned her bank book to the defendant, and was requested by the former to remember the agreement under which the transfer was made, which she said was that the defendant was to invest the money in real estate for her and return it at her request. In compliance with the request of the jury, this testimony was read by the reporter. Thereupon, of its own motion and without any request on the part of the jury, the court had the reporter read the testimony of one Kezer, which was to the effect that he was present when the bank book was transferred and heard no such talk as Mrs. Bonnett related.

To this action of the court, the plaintiff excepted. But this was a matter over which the court could exercise a wide discretion. The request of the jury was addressed to this discretion, and it would have been sufficient if the request had been complied with as made. *State* v. *Manning,* 75 Vt. 185, 54 Atl. 181. But it was not error for the court to go further and have read the testimony which met that requested,—that is, unless he thereby exceeded the bounds of his legal discretion,—which it is apparent he did not do in this case. In this respect the case is like one in which the jury returns disagreed but without any request for further instructions and the court of its own motion proceeds to charge it further. We recently said that an exception to such action of the court was frivolous. *Corey* v. *Rogers,* 85 Vt. 308, 81 Atl. 1130.

Some exceptions, not fairly covered by what has been hereinbefore said, were taken to the charge of the court. But the bill of exceptions shows that in reciting the charge as given, the presiding judge, on account of the death of the reporter, was obliged to rely upon his memory and such imperfect notes as he had. In these circumstances, and in view of the character of the questions thereby raised, we have not deemed it necessary to consider them.

*Reversed and remanded.*